

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ♦ F. 718.263.9598

May 20, 2019

**Via ECF**
The Honorable District Judge J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Martinez v. Radio Star, LLC, et al.**
    **18-CV-9909 (JPO)**

Dear Judge Oetken:

We represent the Plaintiff in the above-referenced matter and we submit this joint letter motion on behalf of both parties seeking approval of the Settlement Agreement (attached hereto as Exhibit 1) ("the Agreement") as fair and reasonable. As directed in Your Honor's April 24, 2019 Order, the parties analyze the factors articulated in *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) as a basis for the Agreement's approval.

**The *Wolinsky* Factors**

**1. The Plaintiffs' range of possible recovery:**

Plaintiff was a former employee of Defendants and alleged that he was employed for approximately seven months. Plaintiff alleged that he regularly worked approximately fifty-four (54) hours per week, but was paid a flat weekly rate of $800.00 per week. As such, Plaintiff's position was that he was misclassified as a salaried employee and was not paid proper overtime rates when he worked in excess of forty hours per week pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

Plaintiff's calculation of damages was approximately $35,460.00, which included approximately $12,730.00 in unpaid wages, approximately $12,730.00 in liquidated damages and approximately $10,000.00 in alleges statutory penalties for failure to provide proper wage notices and wage statements pursuant to NYLL.

Defendants used a time-tracking device to track the hours that Plaintiff had worked and it is the Defendants' position that Plaintiff worked less than 54 per week. In

fact, Plaintiff's hours of work varied from day to day. However, Defendants do concede that Plaintiff was given a fixed salary of $800 per week regardless of number of hours worked. Therefore, according to the Defendant's computations, based on the exact hours shown on the Defendants' records, the "raw" ("hard") number for the shortfall, without the liquidated damages is approximately $5,000.00. Moreover, contrary to the Plaintiff's allegations, it is the Defendants position that a completed Notice of Pay and a copy of Plaintiff's weekly wage statement was given to the Plaintiff.

A *bona fide* dispute existed as to the number of hours worked by Plaintiff.

In light of the above, Plaintiff's range of possible recovery was $0.00 to $35,460.00. The parties reached an agreement to settle this matter for $17,500.00 – an amount that falls squarely in the range of possible recovery for Plaintiffs and an amount that is reasonable in light of the records maintained by Defendants and their potential defenses.

### 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

Although the parties had completed paper discovery prior to reaching a settlement, the parties still had outstanding depositions to conduct. The parties still had to conduct both party depositions (both of which would have required an interpreter) and depositions of a number of non-party witnesses. The parties also faced significant expenses in preparing for and conducting a trial should they have not settled.

Plaintiff would have needed to take multiple days off from his current job and Plaintiffs would have incurred significant expenses preparing exhibits for trial and hiring court-licensed translators for Plaintiff.

### 3. The seriousness of litigation risks faced by the parties:

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiff was confident that he could succeed on all of his claims, Plaintiff recognized the seriousness of losing at trial and not recovering anything from Defendants. The seriousness of this risk favored the settlement for Plaintiffs. Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

### 4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":

The parties engaged in extensive back-and-forth settlement talks for approximately four months prior to reaching a settlement. The parties began their settlement discussions in January 2019, which culminated with a settlement in principle on or around April 24, 2019.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of months-long arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality or release of claims unrelated to the wage-and-hour claims asserted in this matter.

### 5. The possibility of fraud of collusion:

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### Attorneys' Fees

The parties agreed to settle this matter for a global settlement of $17,500.00.

Plaintiff's counsel respectfully requests $615.00 for identifiable expenses, which includes: the Southern District of New York filing fee ($400.00) and the costs of serving the Defendants through their process server, Anke Judicial Services ($200.00), and postage fees ($15.00).

Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($16,885.00), or approximately $5,631.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore the total amount to be paid to the attorneys in this matter, including reimbursement of expenses, is $6,243.00.

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). The Court in *Cheeks* did not assert that the Court needs to approve the attorney fee agreement in each FLSA case. The Court there denied the attorneys' fees because the attorneys were seeking to recover between 40 and 43.6% of the total payment with no justification as to why the attorneys would be entitled to an amount larger than the norm. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015)(*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015).

Here, Plaintiff is requesting attorneys' fees in the amount of one-third of the settlement total, pursuant to the retainer agreement entered into with the client. Since one-third is the standard amount allowed to attorneys in FLSA cases, and the Plaintiff entered into a contract for this amount with their counsel, this amount is not unreasonable, and *Cheeks* does not disagree.

In closing, the parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement.

We thank Your Honor for his continued consideration on this matter.

Respectfully submitted,

/s/_____
Roman Avshalumov, Esq.
James O'Donnell, Esq.
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road
Suite 601
Kew Gardens, New York 11415
(T): 718-263-9591